And our last case of the day is Sarah Thomas v. Neenah Joint School District, appeal number 22-2527. Mr. Henderson, can you hear us? I can. Thank you, Your Honors. And thank you for allowing me to appear remotely at short notice due to the COVID issues. It's very appreciated, perhaps by others in the courtroom as well. If it please the court, we're here really to present a rather straightforward question. And that is ultimately when reviewing the decision of the district court, particularly a dispositive one on a motion to dismiss, do we want it done fast or do we want it done right? Now, I am painfully aware that I am presenting that statement when it's five minutes after noon, the last argument of the morning, and my client's request for relief is the only thing standing between all of us and lunch. We long ago learned to breakfast well. Indeed, Your Honor, and perhaps that brings me into a good first point. And that's the notion of I could fixate on lunch, but fixation becomes the problem. Really, the key issue here in the case from our point of view is a with proving the existence of a widespread practice or policy strictly by repetition. In this case, we do not disagree with the case law that defense is quoted that the court quotes indicating that when repetition is the issue, you've got to show more than once or twice. Absolutely. You have to show certain things that aren't necessarily there in this case. The question becomes, do we ever actually have to make that inquiry? Our position is that we should not in this case because that's not how we prove the existence of the practice or custom, or rather at this point, I should say that's not how we raise a plausible argument of the existence of this particular custom or practice. Instead, what our amended complaint presents is a situation in which really there are three key elements to our claim of why we believe there is a practice and custom at work behind the actions of a couple of the teachers and police officers working with defendants here. And the first is I'm going to present it in slightly different order than the brief, and my apologies, but I'll present the first one today as a specific reference that the school district later makes to these actions of Mr. Fridley and others on the day with the child in question, and that they refer to it in subsequent communications with the mother, my client, as a support. And in the context of their ongoing communications having to do with special education, a support is a specific term of art. A support can mean all kinds of things out in the general world, but in that particular world, it has a special meaning. And that special meaning is essentially a chosen and deliberate response to And it means that's ultimately essentially policy. It's in fact directed its practice and that's the very point of it. And so the first issue there is that we effectively have the existence admitted through that. We know that there is a support. That seems to me, Mr. Henderson, somewhat circular. For example, let's suppose we're dealing with a police action shooting and there's always going to be an internal investigation of that. And the police come back and they say what the police officer here acted consistent with departmental policy, didn't do anything wrong. There's a radical factual disagreement about what in fact happened. But is that finding that the internal finding that the officer or in this case the teacher didn't do anything wrong. Sufficient to permit a Monell claim to go forward on a practice or custom. Judge, I'm not sure if it would be alone or not in the police context. I think in this context, it's a little different and what you point out is similar to the second element of how we show our claim. But that element doesn't exist in a vacuum and one of the things that I would define a little bit differently here in terms of what's happening in this case is the complaint that Miss Thomas raised it to which the school district responded. I would say similarly to what your honor just suggested the idea that we didn't find anything wrong with this that what they're talking about isn't simply a random contact between a police officer and a person that potentially turns deadly or tragic but rather an exercise of specific authority specific practice protocol to do the support to respond in a certain way to what's happening here. And my apologies judge. It looked like you were about to ask a follow-up. I didn't want to interrupt you. If not, I'll move on. I did want to ask you where in your appendix is the judgment in this case. It should be in the required appendix with the brief. Your honor, if I remember correctly, you gave us the opinion, but not the judgment. And particularly, I'm sorry, your honor. It can be a problem. There was a separate. It appears to have been harmless here because there's no question about this having actually been an appealable final judgment, but with motions to dismiss it often can be. Yeah, I apologize if I've made it oversight there, your honor. And your honor, I would say one more thing to the issue of what is part of this appeal that I think is relevant here. I don't want to sort of pre-argue defense's case, but I do think it's important to address something that is a significant feature of the defense's response brief here and that is to bring other issues into the appeal such as causation or whether or not the force used was excessive. The reason those are not part of this appeal is because no findings or judgment was issued. No opinion was issued adverse to us from the district court. You know, we're not here to appeal the motion to dismiss from defendants, but rather the order based on it from the district court. Well, the defense is entitled to offer an alternative basis for affirming such as there was no underlying violation here. And when you don't file, you're not required, contrary to what the defense says, you're not required to argue that in your opening brief, but there was no reply addressing that and that's concern. And you're in again on your honor. I respectfully would disagree. I understand. Of course the position of the court there. And what do we do? I mean, are you telling us we can't affirm on an alternative ground that you failed to address? What I'm saying is I believe it's consistent with our protocols that are well established that we only deal with the appeal were given. We deal with what was found by the district court. What was ordered that you were correct. You are correct that that's all you needed to address in your opening brief. You did not waive anything by not raising other issues in your opening brief, but when the defense proposes alternate grounds for affirmance that were briefed in which you had the opportunity to address in the district court, it's a concern. It could be deemed a waiver even. I understand your argument, your honor. It's at about two minutes here. I did reserve or seek to reserve about two minutes for rebuttal. So if there are no further questions at this time or pressing I'd like to go ahead and and save that for rebuttal. There is one thing I want to ask you about before you before you stop is it's a it's a concern about this kind of litigation more generally. That is if I understand your position correctly. You if the case goes beyond pleadings, you'd probably need to come up with more incidents than just those involving this family, correct? I believe it's likely we would judge. Yeah, how would you find that department? How would you find those? And I'm particularly concerned about the possibility of managing discovery of highly confidential files involving other specific individuals. Special education students in the district. Indeed your honor. I think that where we would probably start because here we would potentially have some interplay with police records as well when they responded and that might allow us to do some broader discovery in that first to narrow down things like date ranges. But the other thing that I would point to since we're dealing strictly with a practice that relates to students who are acting out based on a disability that would also allow us to narrow pretty specifically what we're looking for because we'd be talking about a very small subset of students in this particular case. So that's how I would would approach that. You think their families might want to have a say about whether you get access to those? Indeed judge there. There absolutely could be issues of protective orders of how we have to manage it. Of course, and that's the complicating factor. It goes back to what I said of do we want it done faster? Do we want it done? Right at this is the kind of litigation that I recognize is not expedient. It's difficult. It presents challenging questions. My last question is why you've you've set for yourself a pretty daunting task to plead and prove them an L claim. Why no individual claims here? And your honor the reason simply is that we don't think an individual claim fits the facts. It's easier. We get it. If there were evidence that we have that suggests I'm sorry may finish that that thought briefly. Yes, of course. That we have if we had evidence that suggests that these particular people went into their own discretionary world went outside of what they were directed to do what was accepted practice in that district. But here the evidence we have simply points to this being a problem of practice of how they do these supports rather than actions of the individuals where then we're trying to do something to respond yet superior. Thank you. Thank you, Mr. Anderson, Mr. Sacks. Nobody told you about the trap door button, right? So may it please the court Jonathan Sacks on behalf of the defendant of Helly the Nina Joint School District. This appeal presents one issue whether plaintiff's amended complaint states a plausible claim for relief against the district under Monel. This was not a fast and loose case the district court dismissed the original complaint without prejudice and provided plaintiff with a found. Specifically the district court pointed out to the plaintiff. Mr. Sacks. Can I jump into the amended complaint? Is there a policymaker for the school district in the amended complaint? There is not a policymaker is that term is used and defined under the case law asserted in the amended complaint. The only reference to a supposed policymaker is the school district's administrator. Is that Andrew? No, Andrew, the complaint doesn't tell us what the administrative duties are under Wisconsin law and administrator or even like an acting principal does not have final decision-making authority that would make them a policymaker because they report to a superintendent or a school board who have typically been found to be the final policymakers under Wisconsin law. The major point in the deficiency in that in the complaint that was not corrected in the amended complaint is that it still focuses on one incident where CSS teacher restrained her which is something that's provide for and permitted by Wisconsin law. Can you ever infer widespread practice with one with one instance of the entire theory raised by the plant is based on the widespread practice not the app in action in the face of multiple incidents. This is not a accident waiting to occur that was never raised that doesn't have there been applied outside of the custodial setting. This is the type of case where sufficiently plead a plausible claim. There must be facts to show a pattern more than one instance involving other students other staff members. It's simply would require too large of an unreasonable inference to take one instance here and for a municipal policy or practice. Well, why can't the plaintiff say as he is the alleged here. Um, here's what here's an incident. I know about looks to me like we have indications that the individual actors for the school district were acting according to what looks like a policy as opposed to spur of the moment overreactions and I need discovery into similar incidents involving other special education students within the school district. That would make my proof is you all are relying on a lot of summary judgment cases after which which comes after folks have had the opportunity to look for other evidence to support their mental problems. They're clean if it's not required to plead exact factual information that these other incidents specifics about the other incidents or other circumstances, but they need to present facts in their complaint that allow the inference to be made to show the such examples could exist and there's no facts in this amended complaint that would show that words infer suggest that such as examples will ever exist through discovery. What's wrong with just saying look, I know what happened to my daughter and the school district is treating this as perfectly ordinary and routine. So if it really is that ordinary and routine there probably are some other similar examples. For that to take place. There were need to be facts to actually plausibly suggest that those future examples exist in the in this amended complaint. That's four corners of the amended complaint here, but she's not limited to the four corners of a complaint. Okay. I don't do not believe that without at least alleging that something could possibly exist or there's other example or having some actual specific facts that relate to other than just mere speculation. There has to be something more in the amended complaint. Okay, her response to that is I'm not speculating. I know what happened to my son. I know what happened to my daughter a few weeks after this and it looks to me like there's this just in my own family. I've seen a pattern of over physical overreaction to an agitated student and I'm perhaps non-compliant. Although the complaint doesn't tell us that and and and the evidence that I've seen and heard about this incident suggests that there was nothing unusual about this that the teachers and administrators and police officer basically treated this as another day at the at the office. The fact that the school district did not for example, find that anything was wrong with it. Doesn't you know, I agree with you. I'm not talking about the internal review. I'm talking about the behavior that the plaintiff describes on the scene. Assuming the that the the behavior described is just you know, is describing a constant in actual excessive seizure here. Let's assume that for right now. It does allege that she was screaming in pain, right? That is that is in the in the amended complaint. Yeah, right and I guess to get to my broader problem here. Mr. Sacks it is we've got our Wallace case that says we're going to apply a totality of the circumstances test here. How do we apply that on a motion to dismiss? If you look at the solely on the allegations raised and if the court can determine based on its review of case the case law on the precedent that objectively is not an excessive use of force then that kind of terms on motion to dismiss. How do I decide that on this complaint? It said doesn't tell me that the child was non-compliant but just tells us that these three grown men manhandled her for a total of a half an hour while she's screaming in pain and confused as to what's happening. The factual allegation is that the school district staff pinned her against the wall for 13 minutes during a behavior behavioral episode that was caused was a manifestation of her disabilities. If there's more to it than that, right? I mean, yeah, you're right. That's that's what it says for the vote for that period of time. Then we have the police officer the hobbling Etc. And it all adds up to more than I don't know that 13 minutes is gets you off the hook by itself. If you've got a child screaming in pain where we say on it on the pleadings, no problem. Basically with the in light of the statutory provision that says restraining school can be used in the light of those manifestations of disabilities. I still believe it's probably a closer call but the court could still hold as an alternative Brown and look at it objectively find that that was not objectively unreasonable. And what in the complaint tells us? It was not objectively unreasonable. The well, there's the lack of the lack of facts about what actually happened. Don't provide the additional enhancement to nudge it from plausible to possible. One of the things I was curious about what's the problem with her wanting to take the elevator? Well, there's no there's no there's no facts and then they can play to tell us right about the about the risk what what the undesirable response was that precipitated this it's absent and it's plenty of spurred in to plead facts to show the existence of plausible existence of underlying constitutional violation. Well, sure, but reading reading her version of the facts the teacher's response looks almost unprovoked. When you're just looking at the facts and not conclusions of law and the the way that the facts are described with adjectives, there's limited. There's still nothing there is still insufficient facts to show the underlying constitutional violation on an unprovoked seizure of a student. It leaves her screaming in pain. They're supposed to give plaintiff the benefit of favorable inferences from the men to complain describes it as a manifestation of her disability. I said that she was showed this young autistic child was shoved into a wall. That's that's the allegation in the complaint. Yes, I see my time is up. I would just wait to finish with point to this course precedent says that pointing to a few incidents of official action is generally insufficient to show the existence of an entrenched policy entrenched practice with the force of policy. We respectfully request that the court from which case is that from that is from the Milstein case that judge Kirsch was on the panel for does not matter which members of the court were on the panels. I should have said that earlier today, but and was that summary judgment or motion to dismiss Milstein was a motion to dismiss and part of the motion to dismiss cover. They moved all claim. Okay. Thank you. Thank you. Mr. Sacks. Mr. Henderson will give you two minutes for rebuttal. Thank you, Mr. Anderson. Can I start with a question? Can you cite one case where we have held that it's sufficient under Monell for a plaintiff to plead because this happened to me, it must have happened to somebody else. Therefore, there's a policy in which I get to take discovery. One case judge. I'm not aware of one in which in Seventh Circuit in which that alone is sufficient. That's why we don't rely on it. But that's what you do here, isn't it? And you say it happened to your client. So it must have happened to somebody else. And therefore, there must be a policy and we need discovery to determine that and 12b-6 means nothing. We get to rule 56, no matter what. That's your argument. Your Honor, that's one argument out of three in terms of how we prove the existence of the policy or think we can't. What are the other two? Well, as I said, Judge, one is that the district itself in communications with our client has actually referred to this as a practice that they do for chosen reasons, a support that has a specific term of art associated with it, that that is the way the district chooses to respond to a student with this disability issue. And second being then the addition of coordination that we see, you know, Judge Hamilton kind of spoke to that a bit earlier in Colloquy that we have things that absent a coordination, absent a practice that had been presumably done before and to be done again, simply don't make sense, that they would be irrational lack of reactions to serious things. Even just to point out one particular example of that, when I believe it's Officer Ross, the school resource officer who comes to the scene as... Would that happen? Let me ask you, because time is short. Would that happen anytime three or four police officers acted in consort with particular, with respect to one particular arrest because the officers coordinated their actions in effecting the arrest? It must be a policy of the city. May I briefly respond? Yes, of course. Okay. Okay. Yes. Sorry. I just saw my time was up. I didn't want to assume. Your Honor, I don't think simply coordination in the actions. I'm talking about the reactions and the things that they say to each other that indicate, for instance, being on the same page that seems to relate back to something else. I'm talking about the lack of reaction where you've got something that on its face to a reasonable person is going to appear incredibly excessive, even brutal, and there is no reaction indicating they think it's even out of the ordinary. So that's what I'm talking about. Not merely the idea that people are working together to do something. Could I ask you, Mr. Henderson, to address, nobody seems to have cited it, but the Leatherman against Tarrant County Narcotics case in which the Supreme Court rejected any heightened pleading standard for Monell claims in our opinion in fight against Chicago where we said you don't have to identify other circumstances in your complaint. And Your Honor, my apologies. I don't have either of those in front of me at the present time. I would think Leatherman is absolutely central. It's not in your brief, but it's absolutely central to your to your pleading standard for Monell claims. Unanimous reversal by the Supreme Court of the Fifth Circuit's heightened pleading standard for such cases. And Your Honor, really when we talk about the fixation with the idea of repetition, I mean, that's essentially what I would argue what that is, is it becomes a heightened pleading standard. It asks us to essentially plead something that really isn't actually necessary to show the plausibility of the underlying claims. Thank you, Mr. Henderson. Thank you, Your Honor. Counsel will take the case under advisement and the court will be in recess until tomorrow morning.